DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**M.D.,** the Father,
Appellant,

v.

**STATE OF FLORIDA, DEPARTMENT OF CHILDREN AND FAMILIES,**
Appellee.

No. 4D15-3858

[April 6, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Kenneth L. Gillespie, Judge; L.T. Case No. 11-5768 CJDP.

Katherine L. Corrigan of KLC Law, P.A., Fort Lauderdale, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Carolyn Schwarz, Assistant Attorney General, Children's Legal Services, Fort Lauderdale, for appellee.

Kelley Schaeffer, Sanford, for Guardian Ad Litem Program.

CIKLIN, C.J.

M.D. ("the Father") timely appeals a final judgment terminating his parental rights as to his four-year-old daughter based on a finding that he abandoned her. Because competent, substantial evidence supports the trial court's judgment, we affirm.

The child has been sheltered on and off her entire life, the first time just a few days after her birth. In January 2015, the Department of Children and Families ("the Department") petitioned for termination of each parent's parental rights.[1] The petition alleged that the Father abandoned the child as defined in section 39.01, Florida Statutes, in that he has failed to maintain a substantial and positive relationship with

---

[1] A consent default was entered for the Mother, who is not a party to this appeal.

her. Specifically, the Department contended he had not participated in visitation with the child since July 2014 and had not contacted the Department regarding her safety and well-being.

The Father was incarcerated at the time of trial, and had been for approximately two years prior. The Department presented evidence that the Father was advised of his right to exercise visitation via correspondence on multiple occasions, yet he sent only two letters to the child in the duration of his incarceration. The record includes letters to the Father from a children's advocate assigned to the case advising him that correspondence to the child may be mailed to the advocate's attention at the address printed on the advocate's letterhead. The successor advocate testified at trial that she also sent the Father a letter informing him of how he could contact his daughter. The successor advocate confirmed that the Father received the letter.

The Father admitted that, for the six months leading up to his incarceration, he was not as involved in his daughter's life as he previously had been, and that the last time he saw his daughter was sometime around her second birthday. The Father testified that he sent his daughter letters on a weekly basis during his incarceration, all addressed to the attention of a child advocate. He contended that he had proof of the letters, but was not allowed to bring the letters with him. On the last day of trial, the Father brought eight letters with him, but he had no proof that they had actually been mailed. He also contended that he was not allowed to send letters to his attorney. The Father further provided inconsistent testimony about prior arrests. At one point, the Father was asked if he understood perjury and what would happen if he did not tell the truth in court, to which he replied, "Pretty much nothing because I'm already incarcerated. What's the worst that can happen? I'm already locked up. Another month or two on my sentence."

In a thorough and well-documented order, the trial judge terminated the Father's parental rights. The trial judge specifically found that the Father knew how to communicate with the child in an effort to maintain a relationship, but he did not, and found the Father's testimony not to be credible.

On appeal, the Father argues he did not abandon the child because he did everything in his power to maintain a positive relationship with her. In support of his argument, he points to the eight letters produced at trial.

The Department asserts that the Father's argument would require

2

this court to improperly reweigh the evidence, and that competent, substantial evidence supports the trial court's finding that the Father abandoned the child.  We agree with the Department.

"While a trial court's decision to terminate parental rights must be based upon clear and convincing evidence, our review is limited to whether competent substantial evidence supports the trial court's judgment."  *J.G. v. Dep't of Children & Families*, 22 So. 3d 774, 775 (Fla. 4th DCA 2009).  "[S]o long as the trial court's ruling on one of the statutory grounds set forth in section 39.806, Florida Statutes, is supported by the evidence, the court's decision is affirmable."  *J.E. v. Dep't of Children & Families,* 126 So. 3d 424, 427-28 (Fla. 4th DCA 2013).

Parental rights may be terminated when a child is abandoned.  § 39.806(1)(b), Fla. Stat. (2015).

> "Abandoned" or "abandonment" means a situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the caregiver, while being able, has made no significant contribution to the child's care and maintenance *or has failed to establish or maintain a substantial and positive relationship with the child*, or both.  For purposes of this subsection, "establish or maintain a substantial and positive relationship" includes, but is not limited to, frequent and regular contact with the child through frequent and regular visitation *or frequent and regular communication to or with the child*, and the exercise of parental rights and responsibilities.  Marginal efforts and incidental or token visits or communications are not sufficient to establish or maintain a substantial and positive relationship with a child.

§ 39.01(1), Fla. Stat. (2015) (emphasis added).

Here, the trial court's finding of abandonment was supported by competent, substantial evidence.  Testimony established that, aside from two letters, the Father failed to communicate with the child during his approximately two-year period of incarceration.  He further testified that he had little involvement with the child in the six months leading up to his incarceration.  Accordingly, the Department proved that the Father failed to maintain a substantial and positive relationship with the child as defined by section 39.01(1).

3

Although the Father provided contrary testimony regarding the volume of his correspondence with the child, the trial court specifically found his testimony not credible. We decline to reweigh the testimony and evidence or substitute our judgment for the trier of fact; rather, we affirm based on the competent, substantial evidence in the record before us to support a finding of abandonment. *See C.S. v. Dep't of Children & Families*, 178 So. 3d 937, 940 (Fla. 4th DCA 2015).

We decline to address the second issue raised by the Father, as we find it without merit.

*Affirmed.*

WARNER and KLINGENSMITH, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***