DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**K.A.,** the Mother,
Appellant,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES**
and **GUARDIAN AD LITEM,**
Appellees.

No. 4D21-1514

[December 8, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Stacey Schulman, Judge; L.T. Case No. 2020-1291DP.

Antony P. Ryan, Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, and Richard G. Bartmon, Assistant Regional Counsel, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Carolyn Schwarz, Assistant Attorney General, Fort Lauderdale, for appellee Department of Children and Families.

Sara Elizabeth Goldfarb, Statewide Director of Appeals, and Sarah Todd Weitz, Senior Attorney, Appellate Division, Tallahassee, for appellee Guardian ad Litem.

FORST, J.

K.A. ("the Mother") and E.A. ("the Father") separately appeal a final judgment terminating parental rights as to their minor children. Because the Mother and the Father (collectively, "the Parents") advance similar—but not identical—argument across both appellate cases, we address the Parents' arguments in separate opinions. However, in recognition that the termination stems from a common set of facts and the Parents' briefs contain overlapping legal analysis, the opinions contain duplicative language where appropriate.

With respect to the Mother's argument, she asserts both sections 39.806(1)(*l*) and 39.806(1)(f), Florida Statutes (2019), are facially

unconstitutional, and that the trial court's termination under section 39.806(1)(f) was not supported by competent, substantial evidence. As discussed below, we find no merit in the Mother's argument and therefore affirm.

## Background

Following a six-day trial—during which seventeen witnesses testified—the trial court entered a 110-page final judgment terminating the Parents' parental rights. In the final judgment, the trial court terminated the Parents' parental rights to their two young children (E.A.1, a five-year-old girl, and E.A.2, a two-year-old boy), as well as the Mother's parental rights to her twelve-year-old son, K.B., based on the Father's near fatal beating of K.B. (his stepson) in May 2020.

Around that time, K.B. had begun staying at the Parents' home (rather than at his biological father's house) because the Mother was working from home and was able to better monitor K.B.'s schooling. Notwithstanding K.B. purportedly exhibiting sexually inappropriate behavior toward his five-year-old half-sister, the Parents allowed the two children to share a bedroom. Thereafter, K.B. apparently sexually assaulted E.A.1, and the Father beat K.B. with a metal chair, nearly killing him and causing severe physical and mental damage.

Consequently, as of the date of the final judgment, the Father was incarcerated and awaiting trial on a charge of felony battery resulting in serious bodily injury to a child. The Father's near fatal beating of K.B.—and the Mother's alleged acquiescence and failure to prevent such—was not an isolated incident as it pertained to the involvement of the Department of Children and Families ("the Department"). It was the third incident requiring the sheltering of the Parents' children.

The first incident arose in 2014. That year, the Parents lost custody of their then several-month-old child, K.M.A., following a domestic violence episode. Soon thereafter, their parental rights with respect to K.M.A. were terminated and K.B. remained in his biological father's custody and was permitted to visit with the Mother at his maternal grandmother's home on weekends. The Parents were ordered to complete parenting, domestic violence, batterers' intervention, and individual therapy case plan tasks. Neither parent successfully completed the assigned tasks.

Subsequently, in 2018, the trial court sheltered E.A.1 and E.A.2 due to a second domestic violence incident between the Parents which culminated in the Father's arrest. However, the children were returned to

2

the Parents pursuant to a child safety plan, following the Parents' successful completion of assigned tasks. The third sheltering followed the Father's beating of K.B. in 2020.

Ultimately, in consideration of all three shelter events, the trial court terminated the Mother's parental rights pursuant to sections 39.806(1)(f) and (*l*), Florida Statutes (2019), and terminated the Father's parental rights pursuant to sections 39.806(1)(f), (g), (h), and (*l*), Florida Statutes (2019). Both parents timely appealed, and the cases were consolidated for appellate review.

## Analysis

A challenge to the constitutionality of a statute is a pure question of law, subject to *de novo* review. *D.M.T. v. T.M.H.*, 129 So. 3d 320, 332 (Fla. 2013). "To terminate a parent's rights to his or her child, the Department must prove: (1) at least one statutory ground for termination; (2) termination is in the child's manifest best interest; and (3) termination is the least restrictive means of protecting the child from harm." *J.V. v. Dep't of Child. & Fams.*, 46 Fla. L. Weekly D1807, 2021 WL 3556436, at *1 (Fla. 4th DCA Aug. 11, 2021) (citing *B.K. v. Dep't of Child. & Fams.*, 166 So. 3d 866, 873 (Fla. 4th DCA 2015)).

Further, "[t]he standard of review of the final judgment terminating parental rights is whether the trial court's finding that there is clear and convincing evidence to terminate parental rights is supported by competent, substantial evidence." *V.S. v. Dep't of Child. & Fams.*, 322 So. 3d 1153, 1159 (Fla. 4th DCA 2021) (quoting *T.B. v. Dep't of Child. & Fams.*, 299 So. 3d 1073, 1076 (Fla. 4th DCA 2020)). In reviewing such, an appellate court is "not to conduct a de novo proceeding, reweigh the testimony and evidence given at the trial court, or substitute [its] judgment for that of the trier of fact." *T.M. v. Dep't of Child. & Fams.*, 971 So. 2d 274, 277 (Fla. 4th DCA 2008) (alteration in original) (quoting *In re Adoption of Baby E.A.W.*, 658 So. 2d 961, 967 (Fla. 1995)). "[S]o long as the trial court's ruling on one of the statutory grounds set forth in section 39.806, Florida Statutes, is supported by the evidence, the [trial] court's decision is affirmable." *J.E. v. Dep't of Child. & Fams.*, 126 So. 3d 424, 427–28 (Fla. 4th DCA 2013).

### A. Constitutionality of Sections 39.806(1)(l) & (1)(f), Florida Statutes (2019)

"When a statute impinges on a fundamental liberty interest, such as parenting ones [sic] child, we must analyze the constitutionality of the

statute under a strict scrutiny standard." *N.B. v. Dep't of Child. & Fams.*, 183 So. 3d 1186, 1188 (Fla. 3d DCA 2016). To withstand strict scrutiny, "the statute must serve a compelling state interest through the least intrusive means possible." *Fla. Dep't of Child. & Fams. v. F.L.*, 880 So. 2d 602, 607 (Fla. 2004). Moreover, "[t]o succeed on a facial challenge, the challenger must demonstrate that no set of circumstances exists in which the statute can be constitutionally valid." *Fraternal Order of Police, Miami Lodge 20 v. City of Miami*, 243 So. 3d 894, 897 (Fla. 2018). It is the State that bears the burden of proving the validity of a law under strict scrutiny. *Norman v. State*, 215 So. 3d 18, 36 (Fla. 2017).

### 1. Constitutionality of Section 39.806(1)(l), Florida Statutes (2019)

Section 39.806(1)(*l*), Florida Statutes (2019), provides for termination of parental rights where it is established that "[o]n three or more occasions the child or another child of the parent or parents has been placed in out-of-home care . . . and the conditions that led to the child's out-of-home placement were caused by the parent or parents." § 39.806(1)(*l*), Fla. Stat. The Mother argues termination under section 39.806(1)(*l*) is facially unconstitutional because it makes a parent's fundamental right to parent "subject to termination by arbitrary measures and impermissibly shifts [the] burden of proof to [the] parent."

In *N.B. v. Florida Department of Children & Families*, 183 So. 3d 1186 (Fla. 3d DCA 2016), the Third District considered (and rejected) this argument. As part of its strict scrutiny analysis, the court noted the State of Florida "has a compelling interest in protecting the physical and psychological well-being of children," ultimately holding section 39.806(1)(*l*) was "narrowly tailored to advance that interest through the least intrusive means." *See id.* at 1188–89.

In reaching this conclusion, the court cited language from then Chief Judge Hawkes' concurring opinion in *K.J. ex rel. A.J. v. Department of Children & Families*, 33 So. 3d 88 (Fla. 1st DCA 2010). *Id.* at 1188. There, Judge Hawkes stated that section 39.806(1)(*l*)'s purpose is to "protect children when parents continually engage in conduct warranting out-of-home placement[,]" clarifying that "the Legislature [has] concluded it is harmful for children to be removed from the same home numerous times" and "prior instances of out-of-home placement can be relied on in establishing grounds for the termination of parental rights." *N.B.*, 183 So. 3d at 1188 (quoting *K.J.*, 33 So. 3d at 90 (Hawkes, C.J., concurring)).

We agree with the Third District's (and Judge Hawkes') rationale. "[T]he legislature possesses broad discretion in determining what measures are

4

necessary for the public's protection, and [an appellate court] may not substitute [its] judgment for that of the legislature 'insofar as the wisdom or policy of the act is concerned.'" *Barnes v. B.K. Credit Serv., Inc.*, 461 So. 2d 217, 219 (Fla. 1st DCA 1984) (quoting *Hamilton v. State*, 366 So. 2d 8, 10 (Fla. 1979)).  Here, it was clearly within the Legislature's province to decide that three or more out-of-home placements constitutes grounds for termination of parental rights.  Indeed, there is nothing unconstitutional about curtailing a child's ability to be repeatedly removed from the same home.

To the extent the Mother argues section 39.806(1)(*l*) impermissibly shifts the burden to the parent and constitutes a denial of due process, our sister court noted in *N.B.* that the requirement a termination be in the child's manifest best interest and that the termination be the least restrictive means of protecting the child from harm act as additional safeguards supporting the validity of any termination under subsection (1)(*l*).  *Id.* at 1188–89.  Based upon Judge Hawkes' analysis and the presence of additional safeguards, the court rejected the appellant's "facial constitutional challenge to section 39.806(1)(*l*)."  *Id.* at 1189.  We do so as well in the instant case.

Although we have since noted that "the legislature abrogated the least restrictive means inquiry" for subsection (1)(*l*), among others, *see V.S.,* 322 So. 3d at 1163, the manifest best interest requirement remains an additional safeguard.  Here, the trial court considered and evaluated the eleven factors set forth in the "manifest best interests of the child" statute, section 39.810, Florida Statutes (2019).  Moreover, the Mother's appellate brief does not challenge the trial court's conclusion that termination was in the manifest best interests of the children; as such, this issue has been waived.  *See N.W. v. Dep't of Child. & Fams.*, 865 So. 2d 625, 626 (Fla. 4th DCA 2004).  We can therefore discern no basis for finding section (1)(*l*) impermissibly shifts the burden or constitutes a denial of due process, nor can the Mother demonstrate that "no set of circumstances exists in which the statute can be constitutionally valid."  *Fraternal Order*, 243 So. 3d at 897.

### *2. Constitutionality of Section 39.806(1)(f), Florida Statutes (2019)*

Section 39.806(1)(f), Florida Statutes (2019), permits the termination of parental rights if it is established that "[t]he parent or parents engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the child or the child's sibling."  § 39.806(1)(f), Fla. Stat.  Under section 39.806(1)(f), "[p]roof of a

5

nexus between egregious conduct to a child and the potential harm to the child's sibling is not required." *Id.*

The Mother argues termination under 39.806(1)(f) is facially unconstitutional because it permits termination of a parent's fundamental constitutional rights without proof that the parent's conduct towards a sibling creates a substantial risk of harm to the current child, and because the statute creates an impermissible presumption of harm which inappropriately shifts the burden to the parent to disprove.

We recently addressed 39.806(1)(f)'s constitutionality in *V.S. v. Department of Children & Families*, 322 So. 3d 1153 (Fla. 4th DCA 2021). In that case, a parent challenged the constitutionality of the 2014 amendment to (1)(f), arguing this amendment was facially unconstitutional because "it eliminate[d] proof of a nexus between the egregious acts to one child and substantial risk of significant harm to the child's siblings." *Id.* at 1156. We rejected this argument, holding "the 'no nexus required' amendment is not incompatible with [Florida supreme court precedent]" or with strict scrutiny analysis. *See id.* at 1162 (emphasis omitted). In doing so, we specifically noted that *Padgett v. Department of Health & Rehabilitative Services*, 577 So. 2d 565 (Fla. 1991) recognized a parent's conduct toward another child may demonstrate a substantial risk of harm to the current child in "some cases," and "'[e]gregious conduct' would appear to fall into the narrow 'some cases' category." *Id.* at 1161.

Subsequently, in *R.S. v. Department of Children & Families*, 46 Fla. L. Weekly D2132, 2021 WL 4448768 (Fla. 4th DCA Sept. 29, 2021)—a case where the parent raised the same burden shifting argument that the Mother now raises—we again upheld section 39.806(1)(f)'s constitutionality. Thus, we follow our precedent in *V.S.* and *R.S.* and reject the Mother's argument.

Moreover, as with section 39.806(1)(*l*), the Mother presents no argument that termination under section 39.806(1)(f) was not in the children's manifest best interests. Accordingly, any argument pertaining to such is waived.

*B. Competent, Substantial Evidence Supported Termination Under Section 39.806(1)(f)*

As just stated, section 39.806(1)(f), Florida Statutes (2019), permits the termination of parental rights when a parent has "the opportunity and capability to prevent and knowingly fail[s] to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of

the child or the child's sibling." § 39.806(1)(f), Fla. Stat. The Mother argues the Department failed to establish by clear and convincing evidence (and therefore, the trial court's finding was not supported by competent, substantial evidence) that termination was warranted under section 39.806(1)(f).

Section 39.806(1)(f)2. defines egregious conduct as "abuse, abandonment, neglect, or any other conduct that is deplorable, flagrant, or outrageous by a normal standard of conduct." § 39.806(1)(f)2., Fla. Stat. Here, the following highly relevant evidence was presented at trial in support of the trial court's finding that the Mother had the opportunity and capability but knowingly failed to prevent the Father's egregious conduct:

- testimony concerning the Father's past, including domestic violence incidents which turned physical;
- the Father's own expert witness' testimony, in which the expert acknowledged an existing tension between the Father and K.B.;
- the Mother's acknowledgment the Father did not want K.B. in the home;
- the Mother's actions in allowing K.B. to share a room with E.A.1 despite knowing about K.B.'s behavioral problems. While the Mother testified K.B. was no longer exhibiting the same behavior, the Mother also maintained she was frequently on guard and kept the children's bedroom door open to monitor them;
- the Mother's testimony concerning the incident that left K.B. near-death, noting that, while comforting E.A.1, she heard "tussling" sounds coming from the room in which she had just left K.B., but she was unable to give an exact timeframe for how long it took to re-enter the bedroom and check on K.B.; and
- E.A.1's statement during a Child Protection Team interview that she witnessed the Father hit K.B. with a chair six times—despite the Mother's testimony she was in the kitchen with E.A.1 during this assault.

Based on such evidence, it cannot be said that the trial court's decision to terminate the Mother's parental rights under section 39.806(1)(f) was not supported by competent, substantial evidence. Additionally, we may not conduct a *de novo* review or "reweigh the testimony and evidence given at the trial court, or substitute [our] judgment for that of the trier of fact." *T.M.*, 971 So. 2d at 277 (quoting *Baby E.A.W.*, 658 So. 2d at 967). In any event, any error would be harmless in light of the termination of the Mother's parental rights under section 39.806(1)(*l*). *See J.E.*, 126 So. 3d

at 427–28.  Thus, we affirm as to this issue.

## Conclusion

Upon careful consideration, because we hold sections 39.806(1)(*l*) and (1)(f), Florida Statutes (2019), are not facially unconstitutional, and because competent, substantial evidence supports the trial court's termination under both statutory provisions, we affirm the trial court's final judgment of termination of the Mother's parental rights as to E.A.1, E.A.2, and K.B.

*Affirmed.*

CONNER, C.J., and KUNTZ, J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***